IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SANTIAGO CRUZ,

    Plaintiff,

  v.

OFFICER C. BETANCOURT,

    Defendant.
                               /

No. C 16-0152 WHA (PR)

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; DENYING MOTION TO STRIKE**

## INTRODUCTION

Plaintiff, an inmate at the California Training Facility ("CTF"), filed this civil rights case under 42 U.S.C. 1983 alleging that Officer C. Betancourt, a CTF correctional officer, retaliated against him for filing administrative grievances and orchestrated an attack upon plaintiff by another inmate. Defendant has filed a motion to dismiss or for summary judgment, plaintiff has filed an opposition to the motion to dismiss, and defendant filed a reply brief. Plaintiff then filed a separate opposition to the motion for summary judgment and declaration by another inmate, and defendant filed a motion to strike plaintiff's opposition to the motion for summary judgment and the declaration. For the reasons discussed below, the motion to strike is **DENIED**, and the motion for summary judgment is **GRANTED**.

## STATEMENT

In 2014, plaintiff was housed in a unit of CTF known as "Whitney Hall," where defendant was a floor officer. Plaintiff suffers from mental illness for which he received medication. On April 15, 2014, plaintiff was placed on "C-status" — a designation for inmates who have a disciplinary history — because he had one serious rule violation and two

administrative rules violations within the previous six months. Inmates on C-status lose certain privileges, including possession of televisions and other appliances, which may be confiscated by prison officials. On May 5, 2014, defendant worked his ordinary shift from 6:00 a.m. to 2:00 p.m. as the floor officer in Whitney Hall, and during his shift he searched plaintiff's cell and found a television, which he confiscated. At 4:28 p.m., after defendant's shift had ended and he was no working, plaintiff was assaulted by another inmate named Osborn. Osborn was also housed in Whitney Hall on C-status. Osborn seriously injured plaintiff, including knocking plaintiff out and breaking four of his ribs.

According to plaintiff, defendant generally allowed C-status inmates in Whitney Hall to keep prohibited appliances in their cells as long as they behaved well. Plaintiff asserts that on May 5 defendant searched plaintiff's cell and confiscated the television in retaliation for administrative grievances plaintiff had submitted against defendant's partner, Officer Carillo.

Plaintiff also claims that defendant orchestrated Osborn's assault of plaintiff on May 5. Specifically, plaintiff asserts that in the morning of May 5, defendant confiscated prohibited items from both plaintiff and Osborn after searching their cells. According to plaintiff, defendant told Osborn that plaintiff had reported Osborn's possession of appliances knowing that Osborn would be angry at plaintiff for being a "snitch." Plaintiff contends that defendant also knew that Osborn would have access to plaintiff in the afternoon of May 5 when they would both be released from their cells to receive their medications. Therefore, plaintiff claims that Osborn's assault of him was set up by defendant.

Plaintiff further alleges that following this incident and up until the date plaintiff prepared the complaint filed in this case — December 15, 2015 — defendant continued to threaten plaintiff with "more of the same" property confiscation and serious injuries.

**ANALYSIS**

Defendant argues for dismissal of plaintiff's claims, and in the alternative for summary judgment. Because he is entitled to summary judgment for the reasons discussed below, the dismissal arguments need not be addressed.

2

**A.	STANDARD OF REVIEW**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Ibid.* The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Ibid.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Ibid.* At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014).

**B.	PLAINTIFF'S CLAIMS**

1.	Retaliation Claim

Plaintiff claims that defendant retaliated against him for filing administrative grievances against defendant's partner, Officer Carillo. Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. 1983. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408

F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

There is no triable issue of fact related to the second element of a retaliation claim. To satisfy the second element of a retaliation claim, plaintiff must prove that defendant took the adverse actions "because of" plaintiff's protected conduct. *See ibid.* The adverse actions asserted here took place on May 5, when defendant searched plaintiff's cell and confiscated the television, and then allegedly orchestrated Osborn's assault of plaintiff later that day (ECF No. 1 at 2, 3; ECF No. 46 at 2). Plaintiff's asserted protected conduct was an administrative grievance he filed about defendant's partner, Officer Carillo, several weeks earlier (ECF No. 46 Exh. A). Retaliation is not established simply by showing adverse activity by defendant after protected speech, however; rather, plaintiff must show a nexus between the two. *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*, i.e., "after this, therefore because of this"). The papers evince no nexus or relationship of any kind between defendant's actions on May 5 and the grievance filed by plaintiff against Carillo. There is no dispute that defendant could search plaintiff's cell and confiscate the television because plaintiff was on C-status due to plaintiff's disciplinary history. Even if, as plaintiff asserts, defendant had not previously enforced those regulations, there is no evidence that his doing so on May 5 was motivated by plaintiff's grievance against Carillo as opposed to some other reason. Similarly, there is no evidence that Osborn assaulted plaintiff because plaintiff had filed an administrative grievance. In the absence of any such evidence, finding that plaintiff's grievances caused Osborn to assault him would be simply speculation by a fact-finder as there are a host of other reasons the assault might have occurred. Such speculation is not sufficient to create a triable issue of fact.

There is also no triable issue of fact as to the fifth element of the retaliation claim with respect to the search and confiscation of the television. The fifth element of a retaliation claim requires a prisoner to prove the absence of legitimate correctional goals for the defendant's adverse conduct. *Pratt*, 65 F.3d at 806; *see Brodheim v. Cry*, 584 F.3d 1262, 1272 (9th Cir. 2009) (applying four- part test from *Turner v. Safley*, 482 U.S. 78 (1978), to determine whether

4

adverse conduct reasonably related to legitimate penological interest in retaliation analysis). Plaintiff has not done so. As discussed above, there is no dispute that prison regulations prohibited inmates on "C-status" from having a television, or that plaintiff's disciplinary history qualified him from being placed on "C-status." Searching cells and confiscating prohibiting televisions is the most logical way of enforcing a rule prohibiting inmates from having them. Further, a policy that takes away the privilege of televisions for inmates when they break prison rules serves the legitimate correctional goal of preserving order and safety in a prison setting. Plaintiff has presented no evidence that the search of his cell and confiscation of his television did not reasonably advance legitimate penological goals. Thus, even if defendant had done so because of plaintiff's protected conduct, defendant would be entitled to summary judgment because there is no triable issue of fact as to whether the search and confiscation were unrelated to advancing legitimate penological goals.

As there is no triable issue of fact on at least one of the elements of plaintiff's retaliation claim, defendants are entitled to summary judgment on this claim.

2. Eighth Amendment Claim

Plaintiff claims that defendant violated his Eighth Amendment right to be free from cruel and unusual punishment by orchestrating Osborn's assault on him. Defendant moves for summary judgment on this claim Eighth Amendment claim both on exhaustion grounds and on the grounds that there is no evidence that he knew or had reason to know that Osborn would attack plaintiff. The merits argument need not be reached because it clear from the undisputed evidence that plaintiff did not exhaust his administrative remedies on this claim.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a). Compliance with the exhaustion requirement is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Booth v. Churner*, 532 U.S. 731, 739-40 & n.5 (2001). Exhaustion must ordinarily be decided in a summary judgment

5

motion. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id.* at 1166.

The California Department of Corrections and Rehabilitation ("CDCR") provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." 15 Cal. Code Regs. § 3084.1(a). It also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers. *Ibid.* In order to exhaust available administrative remedies within this system, a prisoner must submit his complaint on CDCR Form 602 (referred to as a "602") and proceed through several levels of appeal: (1) first level appeal filed with one of the institution's appeal coordinators, (2) second level appeal filed with the institution head or designee, and (3) third level appeal filed with the CDCR director or designee. *Id.* § 3084.7.

Defendant has shown that plaintiff did not file any administrative grievances complaining that defendant orchestrated the assault by Osborn on May 5, 2014. Plaintiff asserts that he exhausted this claim in an administrative grievance that he filed on September 17, 2014 (ECF No. 43 at Exh. A (grievance number CTF-S 14-01655)). This grievance did not assert that defendant orchestrated the assault by Osborn on May 5, 2014, however, which is the basis for plaintiff's Eighth Amendment claim.

Administrative remedies are not exhausted where the grievance, liberally construed, does not have the same subject and same request for relief. *See, e.g., Morton*, 599 F.3d at 946; *O'Guinn*, 502 F.3d at 1062, 1063. In addition, the PLRA exhaustion requirement requires "proper exhaustion," which means compliance with prison grievance procedures. *Jones v. Bock*, 549 U.S. 199, 217-18 (2007) (the level of detail necessary in a grievance to exhaust a claim is determined by the prison's grievance requirements, and not the PLRA). California prison regulations require the grievance to "describe the specific issue under appeal and the relief requested," " list all staff member(s) involved and [] describe their involvement in the

issue," and "state all facts known and available to [the inmate] regarding the issue being appealed" at the time the grievance is submitted. 15 Cal. Code Regs. § 3084.2(a). It is noted that neither the California regulations nor the PLRA require a grievance to include legal terminology or legal theories unless they are needed to provide notice of the harm being grieved, nor must a grievance include every fact necessary to prove each element of an eventual legal claim. *See ibid.*; *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009).

Grievance number CTF-S 14-01655 did not include even the most basic facts underlying plaintiff's Eighth Amendment claim. It did not state that plaintiff was assaulted on May 5, made no mention of Osborn, did not state that defendant had informed Osborn that plaintiff was a snitch or orchestrated the assault, and did not describe the injuries plaintiff suffered. These facts were certainly known to or available to plaintiff and thus had to be included in the grievance under the California regulations. In the "actions requested" section of the grievance, plaintiff requested that defendant and Carillo "stop telling others to beat me up," and for an investigation into the "incident" on May 5, 2014. Even if these statements refer to the May 5 assault — which does not appear to be the case for the reasons discussed in the next paragraph — they are certainly not "all" of the facts known or available to plaintiff about that incident, which is what the California regulations require. Because the grievance, even when liberally construed, did not meet the California regulations' requirement to set forth all of the facts known or available to plaintiff about the May 5 assault by Osborn and defendant's purported orchestration of it, the grievance did not "properly exhaust" plaintiff's Eighth Amendment claim as required by the PLRA.

Even if the California regulations did not control the analysis here, the grievance did not properly exhaust the Eighth Amendment claim because it did not alert prison officials to the problem and allow them to take corrective action. *See ibid.* (where prison regulations do not specify how much detail is necessary, proper exhaustion under the PLRA requires a grievance at least to inform prison officials of the problem to afford them an opportunity to correct it). Asking to have defendant "stop telling others to beat me up" would not alert prison officials to

the fact that defendant had orchestrated the May 5 assault because the grievance made no mention of the assault on May 5, Osborn, or defendant's purported initiation of it. Instead, in the same paragraph, the grievance referred to a different fight plaintiff had with another inmate in August 2014, which would reasonably indicate to prison officials that plaintiff was referring to that fight and not the May 5 assault that is the basis of plaintiff's Eighth Amendment claim. Plaintiff's request for an investigation of the "incident" on May 5 also did not alert prison officials to the assault because the only "incidents" mentioned in the grievance that occurred on May 5 were the search of plaintiff's cell and confiscation of his television on that day. Because the grievance did not indicate that plaintiff was assaulted on May 5 or that defendant was involved in setting up that assault, the grievance did not alert prison officials to the problem or give then an opportunity to correct it. As a result, it did not "properly exhaust" plaintiff's Eighth Amendment claim regardless of California's requirements for its prisoner grievances.

Furthermore, the September 17, 2014, grievance could not properly exhaust the Eighth Amendment claim because it would not be a timely of defendant's alleged conduct related to the May 5, 2014, assault. The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). California regulations require an inmate to file an administrative grievance within thirty days of the event being appealed. 15 Cal. Code Regs. § 3084.8. The grievance was filed over four months after defendant allegedly orchestrated the assault on May 5, 2014. Under California regulations, the grievance was an untimely appeal of defendant's conduct on May 5, 2014, which conduct forms the basis of plaintiff's Eighth Amendment claim. As a result, the grievance could not properly exhaust plaintiff's Eighth Amendment claim.

There are no triable issues as to whether the grievance filed by plaintiff on September 14, 2014, exhausted plaintiff's Eighth Amendment claim under the PLRA, and there is no evidence of any other administrative grievance related to that claim. Therefore, defendant is entitled to summary judgment on plaintiff's claim for lack of exhaustion. Because of this conclusion, defendant's other arguments for summary judgment are not addressed.

**CONCLUSION**

For the reasons set out above, defendant's motion for summary judgment is **GRANTED**. With respect to plaintiff's Eighth Amendment claim, the grant of summary judgment is without prejudice to plaintiff bringing the claim in a new action if and when he satisfies the exhaustion requirement of the PLRA.

In light of plaintiff's pro se and incarcerated status, his piecemeal oppositions are allowed, despite the fact that one part of the opposition was not timely filed. Accordingly, defendant's motion to strike plaintiff's opposition to his motion for summary judgment and the supporting declaration (ECF Nos. 46, 47) is **DENIED**.

The clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: June  12 , 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE